# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **VICTOR CORNELL MILLER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **No. CIV 18-135-JHP-SPS** |
| ) | |
| **KENNETH GOODYEAR, et al.,** ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This action is before the Court on Defendants' motion to dismiss or for summary judgment (Dkt. 18) and Plaintiff's motion for class certification and for appointment of class counsel (Dkt. 22). The Court has before it for consideration Plaintiff's complaint (Dkt. 2-5); the parties motions; the responses to the motions (Dkts. 23, 24); Defendants' reply to Plaintiff's response (Dkt. 25); a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Dkt. 16); and Plaintiff's objection to the special report (Dkt. 21).

Plaintiff is a pro se state prisoner in the custody of DOC who is incarcerated at Lawton Correctional Facility in Lawton, Oklahoma, serving two sentences of life without parole. He brings this action under the authority of 42 U.S.C. § 1983, seeking monetary, declaratory, and injunctive relief for alleged constitutional violations during his incarceration at Oklahoma State Penitentiary (OSP) in McAlester, Oklahoma. The defendants are Kenneth Goodyear, OSP Case Manager; Jessica Smith, OSP Warden's Assistant; Kevin Duckworth, former OSP Warden; Mark Knutson, DOC Director's Designee; Joe Allbaugh, DOC Director; and "named and unnamed employees." (Dkt. 2-5 at 1).

Plaintiff alleges that on December 15, 2008, he arrived at OSP from the Lexington Assessment and Reception Center, where he had been assigned to a class level upon initial

entrance into the DOC. OSP officials, however, failed to issue the appropriate prison wages for his class level 2 assignment, as required by DOC OP-060107. Plaintiff claims he continued to meet and maintain the level criteria set forth in OP-060107 and was promoted to class level 3 on June 1, 2009. He again, however, did not receive the appropriate pay. On February 1, 2016, he was promoted to class level 4, but OSP officials continued to withhold his pay. On or about February 3, 2016, Plaintiff discovered his prison wages were not being deposited into his prison trust account. He asserts OP-060107 entitles incarcerated offenders to receive the appropriate pay grade commensurate with class level assignments while being unemployed because of the unavailability of a facility job, "if all other level criteria is [sic] met." (Dkt. 2-5 at 3-4).

Plaintiff further alleges "violations of his constitutional rights to a protected property interest, prohibition against retaliation for exercising a protected right, and denial of access to the courts." (Dkt. 2-5 at 3). He claims Defendants "unlawfully withheld [his] earned prison wages without due process or other justification." *Id.* In addition, he allegedly has been denied the following rights under the federal and state constitutions: (1) the right to property interest, (2) the right to petition the government for redress of grievances, and (3) the right of free speech. *Id*. at 7.

**Motion for Class Certification and Appointment of Class Counsel**[1]

As an initial matter, Plaintiff has asked the Court to certify this case as a class action and to appoint class counsel. (Dkt. 22). Respondent has filed an objection, urging the Court to deny Plaintiff's request. (Dkt. 23).

Plaintiff asserts in the motion that the complaint "alleges facts that affect 'numerous'

---

[1] The motion is improperly captioned as a "motion re-urging motion for class certification and appointment of counsel." This is the first motion requesting this form of relief.

prisoner's [sic] so that non-joinder of all members would be impracticable" . . . [and] "[t]here are questions of law and fact common to the class[.]" *Id*. at 1. Plaintiff further contends the alleged violation of withholding prison wages "spans throughout a number of decades, thereby affecting an innumerable amount of prisoner's [sic] that were and are currently being housed at the Oklahoma State Penitentiary during the years in question, with said injury extending further back than plaintiff's own injury." *Id*.

Rule 23 of the Federal Rules of Civil Procedure sets forth the following requirements for a class action:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)

In *Wal-mart v. Dukes*, 564 U.S. 338 (2011), the Supreme Court held that the district court has an independent obligation to conduct a "rigorous analysis" into the merits of the plaintiff's claims before concluding that Rule 23's requirements have been satisfied. *Id*. at 350-51. As set forth below, the Court concludes that Plaintiff's claims lack merit. Consequently, his motion for class certification and class counsel (Dkt. 22) must be DENIED.

**Standard of Review for Summary Judgment**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A

3

dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. However, a party opposing a motion for summary judgment may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. With these standards in mind, the court turns to the merits of the defendants' motion.

**Tort Claim**

Defendants allege Plaintiff's claims against them in their official capacities, and thereby the State of Oklahoma, must fail, because Oklahoma is immune from suit. The Oklahoma Governmental Tort Claims Act (GTCA), Okla. Stat. tit. 51, § 151, is the exclusive remedy by which an injured plaintiff may recover against a governmental entity for the alleged torts of its agents and its employees. *Fuller v. Odom*, 741 P.2d 449, 451-53 (Okla. 1987).

To bring a claim under the GTCA, a plaintiff must comply with procedural rules. *Crockett v. Cent. Okla. Transp. & Parking Auth.*, 231 P.3d 748, 752 (2010). A person with a claim against the State or a political subdivision must present notice of the claim within one (1) year of the date the loss occurred. Okla. Stat. tit. 51, § 156(B). Otherwise, the claim is forever barred. *Id.*

Plaintiff admits that in January 2017, a presentation of a claim notice pursuant to Okla. Stat. tit. 51, § 156 was sent the Office of the DOC General Counsel, not the Office of Risk Management as is required under Okla. Stat. tit. 51, § 156(C). (Dkt. 2-5 at 4-5). Therefore, Plaintiff failed to comply with the GTCA filing requirements.

In addition, "[n]o action . . . shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after denial of the claim." Okla. Stat. tit. 51, § 157(B). Strict compliance with the GTCA filing provisions is required, and "expiration of the 180-day time period in § 157(B) operates to bar judicial enforcement of the claim against the government to which the Legislature waived sovereign immunity." *Shanbour v. Hollingsworth*, 918 P.2d 73, 75 (citing *Cruse v. Atoka Bd. of County Comm'rs*, 910 P.2d 998, 1004-05 (Okla. 1995)). Because Plaintiff failed to file a proper notice of tort claim before filing suit, his tort claim against the State and the individual defendants in their official capacities are barred.

Furthermore, the GTCA requires all tort suits to be brought against the State or a political subdivision and bars any action against an "employee of the state or political subdivision acting within the scope of his employment." *See* Okla. Stat. tit. 51, § 163(C). *See also Shepherd v. CompSource Oklahoma*, 209 P.3d 288, 293-94 (Okla. 2009) (the state or a political subdivision's "liability for loss resulting from the torts of its employees acting within the scope of their employment . . . is exclusive and in place of all other liability of an employee at common law or otherwise.") Here, the Court finds Plaintiff's tort claim is improperly asserted against the defendants in their individual capacities. Because there is no genuine dispute as to the material facts, and the claim fails as a matter of law, summary judgment on this claim is GRANTED.

**Exhaustion of Administrative Remedies**

Defendants next allege Plaintiff has failed to exhaust the administrative remedies for any of his claims. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

According to the DOC Offender Grievance Process, OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident. If that is unsuccessful, he may submit a Request to Staff (RTS) within seven calendar days of the incident, alleging only one issue per form. If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit a grievance to the Review Authority (warden's office), asserting only the issue of the lack of response to the RTS. If the complaint is not resolved after the response to the RTS, the offender then may file a grievance. If the reviewing authority fails to respond within 30 days, but no later than 60 days, of submission, the inmate may send a grievance to the Administrative Review Authority (ARA) with evidence of submission of the grievance to the proper reviewing authority. If the grievance also does not resolve the issue, the inmate may appeal to the ARA or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken. (Dkt. 16-5 at 6-15).

Plaintiff's complaint includes conclusory allegations of retaliation, denial of access to the courts, violation of his right of free speech, and violation of his right to petition the government for redress of grievances. (Dkt. 2-5 at 3, 7). Plaintiff specifically alleges his earned prison wages were unlawfully withheld without due process or other justification. *Id.* at 3. The record shows he has submitted two grievance concerning the issues of retaliation and prison wages. The remaining allegations were not presented in grievances, and thus are unexhausted.

**Grievance No. 17-576**

On February 13, 2017, Plaintiff filed an RTS, alleging retaliation against him by Defendant Goodyear. (Dkt. 2-5 at 28-29). Goodyear allegedly refused to prepare and submit Plaintiff's transfer papers or to approve and issue any of his eleven clothing requests, although Goodyear issued clothing to Plaintiff's cellmate. *Id*. at 29. Plaintiff contends the alleged retaliation was for his filing grievances. *Id*. at 9.

The response to the RTS stated that Plaintiff's transfer packet for medium security was submitted by Plaintiff's case manager, Arther Woodmore, on August 30, 2016, and the population office received it on August 31, 2016. *Id*. at 28. The packet was pending approval. *Id.* The RTS response, however, failed to address the retaliation issue. *Id.* On March 13, 2017, Plaintiff filed a formal grievance, No. 17-576. *Id*. at 31-32. He claims the grievance went unanswered. (Dkt. 2-5 at 7).

Defendants allege Plaintiff failed to properly complete the grievance process and cure any deficiencies for Grievance No. 17-576. Defendants further assert that even if Plaintiff had completed the grievance process, he did not provide enough information about the nature of his claims for prison officials to investigate and respond to the issues. Defendants maintain that because Plaintiff failed to complete the grievance procedure within the allowed time

7

period, his claims in Grievance No. 17-576 must be denied as unexhausted.

Here, the Court agrees that this grievance is unexhausted. After Plaintiff's grievance was not answered, he could have sent a grievance to the ARA to address the issue of the unanswered grievance. *See* "Inmate/Offender Grievance Policy":

> If there has been no response by the reviewing authority within 30 days, but no later than 60 days, of submission, the inmate/offender may send a grievance to the Administrative Review Authority (ARA) with evidence of submitting the grievance to the proper reviewing authority. The grievance submitted to the ARA will assert only that the inmate's/offender's grievance was not answered by the reviewing authority.

DOC OP-090124 (V)(C)(4) (Dkt. 16-5 at 10).

Here, the Court finds there are no genuine issues of material fact regarding Plaintiff's failure to exhaust the claims presented in Grievance No. 17-576, and defendants are entitled to a judgment as a matter of law. Therefore, summary judgment is GRANTED on this claim.

**Grievance No. 16-016**

Plaintiff also alleges he was unconstitutionally denied gang pay at OSP. On February 9, 2016, he submitted an RTS to Defendant Goodyear, complaining he was not receiving gang pay commensurate to his class level. (Dkt. 16-6 at 11-13). He requested implementation of the policy pursuant to OP-060107 and commencement of his pay grade at class level 3 with back pay and interest, beginning with his OSP arrival in 2008. *Id*. The initial response stated, "According to OP-060107 page 5 you must have a job in order to be paid. Exceptions are O.S.P." *Id.*

On February 19, 2016, Plaintiff submitted Offender Grievance No. 16-016, again requesting implementation of his class level 3 pay grade with back pay at the appropriate levels. (Dkt. 16-6 at 10). The grievance was returned on February 29, 2016, as out of time from the date of the incident, advising that "[t]he inmate/offender grievance must be submitted by the complaining inmate/offender within 15 calendar days of the incident or the

8

date of the response to the 'Request to Staff' form, whichever is later. . . ." *Id.* at 9.

On April 7, 2016, Plaintiff submitted a Grievance Appeal to the ARA, contesting the determination that his grievance was untimely. *Id.* at 7-8. The ARA's response stated, "Your grievance OSP 16-016 requires further investigation by this office. You will receive a response on or before 6/3/16." *Id.* at 6.

On June 2, 2016, the DOC General Counsel sent a memorandum to Defendant Mark Knutson, advising as follows:

> There are some discussions still taking place between Ed Edwards, Dr. Pitman and the Director. . . . They all are aware of the situation, and they know it is urgent. If you can extend it out a bit, that would probably be best. If you need to answer, go ahead and reverse the facility on the timeliness issue and see where it goes from there.

*Id.* at 5. On the same date, Knutson sent Plaintiff correspondence stating Grievance No. 16-016 required further investigation by the ARA, and Plaintiff would receive a response on or before June 30, 2016. *Id.* at 4.

On June 16, 2016, Knutson sent a memorandum to OSP Interim Warden Kevin Duckworth, directing the reviewing authority to prepare an amended response to Grievance No. 16-016 to grant partial relief to Plaintiff. The memorandum stated the grievance was not untimely, and the original response that Plaintiff had to have a job to be paid was incorrect. Instead, Plaintiff would be paid in accordance with OP-060107 for his assigned level from February 1, 2016, the month he commenced his administrative remedies, to present. *Id.* at 3.

Also on June 16, 2016, Defendant Knutson advised Plaintiff by letter that an amended response to the grievance would be provided by the reviewing authority within 15 working days. Plaintiff was further advised that if, after receiving the amended response, he believed he had grounds for an appeal under OP-090124, he could proceed under the policy guidelines. *Id.* at 2.

9

On July 5, 2016, Plaintiff attempted to appeal the amended response to the ARA, alleging the reviewing authority miscalculated the time affected by the back pay issue. (Dkt. 2-5 at 25). The ARA, however, advised on July 11, 2016, that because Plaintiff received partial relief, he could not appeal the relief granted. (Dkt. 16-7 at 2).

Defendants contend Plaintiff has not complied with the requirement that he must fully and properly exhaust his available administrative remedies before filing suit; therefore, his claim for retroactive gang pay must be dismissed. The defendants, however, also admit there is no available administrative remedy for Plaintiff to exhaust his partial relief in Grievance No. 16-016. "[T]he PLRA only requires the exhaustion of 'available' administrative remedies." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (citing *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)). Because there was no available remedy for the issue of additional back pay, the Court finds Defendants' argument that this grievance was not exhausted is without merit.

Defendants argue that even if Plaintiff exhausted his administrative remedies, his allegations regarding gang pay fail to show the violation of a constitutional right by a person acting under color of state law. Plaintiff asserts his constitutional right to a protected property interest was violated when Defendants withheld his earned prison wages without due process or other justification. He cites both the Fifth and Fourteenth Amendments in support of his claim.

The Fifth Amendment Due Process Clause only applies to actions by federal actors. *See Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1207 n.4 (10th Cir. 2005). State actors are subject to the Due Process Clause of the Fourteenth Amendment, rather than the Fifth Amendment. *See Ward v. Anderson*, 494 F.3d 929, 932 n.3 (10th Cir. 2007). Therefore, the Fifth Amendment is not applicable to Plaintiff's claim.

10

To have a protected property interest, a plaintiff must have a "legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1992). Protected liberty interests are at issue in the prison setting only when a prisoner is subjected to (1) conditions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) disciplinary actions that "will inevitably affect the duration of his sentence." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). The Tenth Circuit has applied *Sandin* to property interests, holding that ". . . we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.'" *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999). Further, unless a state employee's unauthorized act deprives an individual of a property interest without providing an adequate post-deprivation remedy, the deprivation does not amount to a procedural due process claim under § 1983. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

There is no constitutional right to prison wages and any such payment is by the grace of the state. *Sigler v. Lowrie*, 404 F.2d 659, 661 (8th Cir. 1968), *cert. denied*, 395 U.S. 940 (1969). *See also Adams v. Neubauer*, 195 F. App'x 711, at *1 (10th Cir. 2016). Therefore, a state may legitimately restrict an inmate's privilege to earn a wage while incarcerated and any right to compensation is governed by the rules and regulations promulgated by legislative direction. *Cumbay v. State*, 699 P.2d 1094, 1097 (Okla. 1984).

In furtherance of the objectives of "the proper government, discipline, treatment, care, rehabilitation, and reformation of state inmates, . . . the state legislature may grant a favor to convicted criminals, but it may also attach such conditions to the granting of the favor as it deems proper." *Id*. (citing *Sigler v. Lowrie*, 404 F.2d 659, 661 (8th Cir. 1968)). Here, OSP

11

operated under an exception where no maximum security prisoners received gang pay without employment or enrollment in a particular program. Further, language in prison regulations governing whether prisoners may earn gang pay does not create a property interest or entitlement that ensures due process to the prisoners. *See Cosco*, 195 F.3d at 1224 (holding that prison regulations governing what the prisoners could keep in their cells did not create a property interest or entitlement which ensured prisoners a continuation of the same interest absent due process).

In Plaintiff's case, OP-060107(I)(B)(1) provides, in part, that "[i]nmates who are not employed due to the lack of facility job availability or not in assessed programs due to unavailability may promote in levels, to include receiving the appropriate pay, if all other level criteria is [sic] met." (Dkt. 16-3 at 4). Although Plaintiff claims a right to a property interest in prison wages, the policy provides the discretion to promote inmates to higher levels and does not mandate an entitlement in promotion. Failure to follow DOC policy, especially when the language provides such discretion, is not a constitutional violation. *See Hostetler v. Green*, 323 F. App'x 653, 657 (10th Cir. 2009).

Defendants allege the "OSP exception," which prevented the facility from distributing gang pay, applied to all inmates equally, and it was a typical type of limitation imposed to the maximum security prison population, allegedly because of security concerns. (Dkt. 16 at 3).[2] The discretionary nature of the policy and the alleged OSP exception thus did not create the "type of atypical, significant deprivation [of earned wages] in which a State might create a [property] interest. *Sandin*, 515 U.S. at 486.

Defendants also assert that because Plaintiff could have grieved the earned wage

---

[3] The special report admits that the special exception could not be located. (Dkt. 16 at 3). Further, the grievance decision from the ARA stated that the ARA's previous response that OSP operated under an exception to OP-060107 was incorrect. (Dkt. 2-5 at 23).

12

provision throughout the more than seven-year period at issue, he had an adequate post-deprivation remedy. *See Hudson*, 468 U.S. at 533. Plaintiff was awarded gang pay retroactive to February 1, 2016, the month he initiated his administrative remedies. (Dkt. 2-5 at 23). OSP also reviewed its internal policies and no longer operated under the exception as of June 2016, thereby providing future gang pay to Plaintiff and to all maximum security prisoners.

As stated above, under the DOC Offender Grievance Process, OP-090124(IV), an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident. (Dkt. 16-5 at 6-7). If that is unsuccessful, he may submit a Request to Staff (RTS) within seven calendar days of the incident. *Id*. at 7. Plaintiff's delay in commencing his administrative remedies restricted the time period for which back wages could be considered. Because post-deprivation remedies were available, Plaintiff did not suffer a deprivation of his procedural due process rights. Further, Plaintiff had no property interest to which he was entitled.

After careful review, the Court finds there are no genuine issues of material fact with respect to Plaintiff's claim for back wages, and Defendants are entitled to judgment as a matter of law. Therefore, summary judgment for this claim must be GRANTED.

**Declaratory and Injunctive Relief**

Plaintiff has requested declaratory relief concerning the alleged unlawful withholding of his funds without due process of law, Defendant Goodyear's alleged retaliation for Plaintiff's grievances, Defendants' alleged unconstitutional refusal to provide a complete remedy, and Plaintiff's exhaustion of all administrative remedies. (Dkt. 2-5 at 9-10).

"[A] declaratory judgment plaintiff must present the court with a suit based on an 'actual controversy' . . . ." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir.

2008) (citations omitted). [However], "even where a constitutionally cognizable controversy exists . . . district courts may--not must--make a declaration on the merits of that controversy." *Id*. (internal quotation marks omitted). "[P]ast exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). Here, Plaintiff has failed to show how a declaratory judgment would settle any controversy or clarify any legal issues.

Plaintiff also has asked for injunctive relief directing Defendant Allbaugh and the DOC Associate Director of Field Operations . . .

> to conduct a comprehensive audit of bookkeeping and accounting practices including the distribution [of] earned prison funds and class level assignment as per OP-060107 during the time in question (2008-2016) being implemented at the Oklahoma State Penitentiary, with full recovery of all inmate funds earned pursuant to 57 O.S. Ann., section 510 and derivative policies and procedures to include any and all interest accrued and earned therefrom at the applicable rates during thereafter affected period.

*Id.* at 10.

Pursuant to *Ex parte Young,* 209 U.S. 123 (1908), a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief. *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002). *See also Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012). To succeed in his request for injunctive relief, Plaintiff must demonstrate a good chance of being injured in the future. *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991). As discussed above, however, there was no violation of federal law and certainly no ongoing violation. Furthermore, the Court can only consider claims "based upon the violation of a plaintiff's personal rights, and not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990). Here, there is no genuine dispute that

Plaintiff's constitutional rights are being violated now or in an ongoing manner. Therefore, Defendants' motion for summary judgment regarding Plaintiff's request for declarative or injunctive relief is GRANTED.

**ACCORDINGLY,** Plaintiff's motion for class certification and for appointment of class counsel (Dkt. 22) is DENIED, and Defendants' motion for summary judgment (Dkt. 18) is GRANTED.

**IT IS SO ORDERED** this 29th day of August 2019.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma